UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE DEJESUS, individually, and
MELVIN DEJESUS, individually;

       Plaintiffs,

                                        No.

-v-                                  Hon.

WILLIAM HARVEY, in his
individual capacity; CHESTER S.
ROMATOWSKI, in his
individual capacity; ROMATOWSKI
CONSULTING & INVESTIGATIONS
INC.; and COUNTY OF OAKLAND,
a municipal corporation; jointly and severally,

       Defendants.

---

## **COMPLAINT AND JURY DEMAND**

NOW COME the Plaintiffs, GEORGE DEJESUS, individually, and

MELVIN DEJESUS, individually, by and through their attorneys, MUELLER

LAW FIRM, by WOLFGANG MUELLER, and file their Complaint against the

Defendants, WILLIAM HARVEY, in his individual capacity; CHESTER S.

ROMATOWSKI, in his individual capacity; ROMATOWSKI CONSULTING &

INVESTIGATIONS, INC., a Michigan corporation; and COUNTY OF

OAKLAND, a municipal corporation, in this civil action, stating unto this Court as

follows:

1.     This is an action for damages brought pursuant to 42 U.S.C. §§1983 and 1988, the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution against Defendants, WILLIAM HARVEY ("HARVEY"), in his individual capacity; CHESTER S. ROMATOWSKI ("ROMATOWSKI"), in his individual capacity; ROMATOWSKI CONSULTING & INVESTIGATIONS, INC., a Michigan corporation (ROMATOWSKI INC.) (collectively referred to as "ROMATOWSKI Defendants");  and COUNTY OF OAKLAND ("OAKLAND COUNTY"), a municipal corporation.

2.     Jurisdiction is founded upon 28 U.S.C. §1331.

3.     Venue is proper based on the situs of the incident, which occurred in the Eastern District of Michigan.  28 U.S.C. §1391.

## **GENERAL ALLEGATIONS**

4.     At all pertinent times Plaintiff, George DeJesus, was a United States citizen.

5.     At all pertinent times Plaintiff, Melvin DeJesus, was a United States citizen.

6.     At all pertinent times Defendant, HARVEY, was employed as a Sergeant by the Oakland County Sheriff's Office ("OCSO"), a department of Defendant, OAKLAND COUNTY, and was acting within the scope of his employment and under color of law.

2

7.     At all pertinent times Defendant, ROMATOWSKI ("ROMATOWSKI"), was self-employed as the owner and principal of Romatowski Consulting & Investigations, Inc., a Michigan corporation ("ROMATOWSKI INC.") and was acting within the scope of his employment and under color of law.

8,     ROMATOWSKI INC. is vicariously liable for the conduct of ROMATOWSKI under the doctrine of *respondeat superior*.

9.     HARVEY and ROMATOWSKI, as sworn police officers, had taken an oath, the Law Enforcement Code of Ethics, that stated in pertinent part:  *"As a sworn police officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice."*

10.     Defendant, OAKLAND COUNTY, at all relevant times, was a municipal corporation organized under the laws of the State of Michigan.

## GENERAL ALLEGATIONS

11.     Plaintiffs' wrongful convictions arose out of the Saturday, July 8, 1995, rape and murder of Margaret Midkiff in the City of Pontiac.  DNA evidence from the scene of the crime was connected to Brandon Gohagen, an acquaintance of the Midkiff family.

3

12.     Gohagen was tracked to Texas, then Florida, where he fled shortly after the crime.  Gohagen confessed to the sexual assault but made the incredible claim that Plaintiffs forced him to rape the victim.  He also claimed that Plaintiffs took the victim's body to the basement of the house where they committed the murder outside of his presence.

13.     HARVEY, the Oakland County Sheriff's detective handling the case, promised Gohagen a sweetheart deal, which was later approved by the Oakland County prosecutor *and conditioned on Gohagen passing a polygraph examination*: implicate the DeJesus brothers in the preliminary examination and at trial and he could plead guilty to the sexual assault and second-degree murder.  By doing so, he would avoid the charge of first-degree murder, with its penalty of life in prison without the possibility of parole.

14.     The Oakland County prosecutor handling the case told HARVEY that the office would only pursue the case against Plaintiffs if Gohagen passed a polygraph examination.

15.     HARVEY contacted ROMATOWSKI, who had performed many examinations for HARVEY and the OCSO, and informed ROMATOWSKI of the conditions for prosecuting Plaintiffs.

16.     ROMATOWSKI was a retired police officer for the Michigan State Police Department, where he served as a polygrapher for years.

4

17.    By all accounts, ROMATOWSKI was a well-trained, very competent polygraph examiner.

18.    HARVEY and ROMATOWSKI spoke about the file and the importance of the Gohagen polygraph and its implications for charging the DeJesus brothers with first-degree murder.

19.    ROMATOWSKI reviewed the entire police file on the Midkiff murder before interviewing Gohagen, who was in the Oakland County Jail.

20.    HARVEY and ROMATOWSKI agreed on a plan to have Gohagen "pass" the polygraph examination so that the DeJesus brothers would be charged with first-degree murder, among many other charges.  In essence, HARVEY would get "three for the price of one."

21.    On May 2, 1997, Gohagen submitted to a polygraph examination given by ROMATOWSKI.  After conducting a lengthy pre-test interview, ROMATOWSKI asked the following questions, to which Gohagen was instructed to answer "no":

> Q.    Other than having sex with MARGARET, did you cause any other injuries to her?
>
> A.    No.
>
> Q.    Did you see MARGARET with the pillowcase over her head?
>
> A.    No.
>
> Q.    Did you hit and/or strike MARGARET in the head?

A.    No.

22.    After reviewing the results, ROMATOWSKI stated the following

conclusion in his May 5, 1997, report to Det. Harvey: *"It is the opinion of the*

*undersigned examiner, based on an analysis of BRANDON K. GOHAGEN's*

*polygraph examination, that he is being truthful to the relevant test questions."*

23.    ROMATOWSKI did not turn over his polygraph exam charts to the

prosecutor.

24.    ROMATOWSKI's fabricated test results gave the Oakland County

prosecutor the assurance she needed to charge Plaintiffs with Margaret Midkiff's

murder.

25.    ROMATOWSKI's conclusion that Gohagen was being "truthful" in

his polygraph examination was intentionally false and deceptive, given that any

reasonable polygraph examiner would have concluded that the results were

"deceptive."  Stated another way, no reasonable polygraph examiner acting in good

faith would have deemed Gohagen to be "truthful" during his polygraph exam.

26.    During the Midkiff homicide examination, detectives from the Pontiac

Police Department and, later, the Oakland County Sheriff's Office, interviewed

two women who were alibi witnesses for George and Melvin DeJesus.  Police field

notes indicate that the women told police the DeJesus bothers were with them at a

house party at the time of the crime.

27.     HARVEY, the OIC on the case, never provided the exculpatory field notes to the prosecutor.

28.     When interviewed a year later, both women were unsure if the party was on a Friday or Saturday night (the murder occurred on Saturday).

29.     At trial, the prosecutor, Donna Pendergast, subjected the alibi witnesses, Christina Ortega and Crystal Sauro, to intense cross-examination about their ability to remember whether the DeJesus brothers were with them at a party on the night of the murder.  In her closing argument, Pendergast told the jury, *"Christina comes in and says 'well, even though a year after the crime I hand-wrote out a statement and yes, that's my writing, I told the police that the party on Robinwood was Friday night, now I know it was Saturday' .... Once again, I ask you, you ask yourselves, does she know what night that party was?  And the answer is pretty clear, no.  She told police Friday a year ago, and now she's saying Saturday."* (Trial, 12-11-97, p. 30).

30.     Plaintiffs were tried and convicted of Margaret Midkiff's murder despite there being no physical evidence they had any involvement with the crime. Their convictions were based <u>solely</u> on the testimony of Brandon Gohagen and the discrediting of Plaintiffs' alibi witnesses, who could not be certain that the party where the DeJesus brothers were present occurred on a Friday or Saturday night. Thus, Plaintiffs could not definitively prove that they were not at the crime scene

7

(despite having no burden to do so).

31.     There was no physical evidence linking Plaintiffs to the murder.

32.     There was no forensic evidence linking Plaintiffs to the murder.

33.     There were no confessions.

34.     There was only the testimony of Brandon Gohagen, whose testimony was brought forward only because of ROMATOWSKI's fabricated polygraph test report and HARVEY and ROMATOWSKI's conspiracy.

35.     Based solely on Gohagen's testimony and the impeached testimony of Plaintiffs' alibi witnesses, a jury convicted Plaintiffs on December 11, 1997.

36.     On December 30, 1997, Plaintiffs were sentenced to terms of life in prison without parole for the crimes of first-degree murder, first-degree criminal sexual conduct, and felony firearm.[1]

## POST-TRIAL DEVELOPMENTS

37.     Following years of unsuccessful appeals, Plaintiff, George DeJesus was able to gain the attention of the Cooley Innocence Project.  Similarly, Melvin DeJesus' case was accepted by the Michigan Innocence Clinic at the University of Michigan Law School.  Their cases were submitted to the recently formed

---

[1] On direct appeal, Plaintiffs' CSC convictions and correlating felony-firearm convictions were vacated, leaving one count of first-degree murder and one count of felony firearm.  *People v. DeJesus*, 1999 WL 33441143 (Mich. App. June 18, 1999).

Attorney General Office's Conviction Integrity Unit ("AGCIU").

38.     After months of investigation that revealed the new evidence, the AGCIU's case was presented to the Attorney General, Dana Nessel, who agreed with the AGCIU's findings and authorized the motion to vacate the convictions and dismiss charges.

39.     On March 22, 2022, criminal charges against each Plaintiff were dismissed.  The orders of dismissal stated, in pertinent part: "New evidence demonstrates that Mr. George DeJesus [and Mr. Melvin DeJesus] [were] not the perpetrator[s] of the crimes and [were] not an accessory or an accomplice to the acts that were the basis for the conviction[s].  The People believe there is clear and convincing evidence establishing defendant[s] DeJesus' innocence."

40.     At the time of their release from prison, George and Melvin DeJesus had each spent over a quarter century in jail and/or prison for crimes they did not commit.

## OAKLAND COUNTY'S POLICIES, CUSTOMS, AND FAILURE TO TRAIN

41.     Prior to the date of Plaintiffs' respective convictions, no OCSO officers or detectives had any training in the proper handling and reporting of exculpatory and/or impeachment evidence or the requirement of candor and honesty when submitting reports to prosecutors or magistrates in support of warrants or when testifying in support of a probable cause finding.

9

42. On and before May 1997, OAKLAND COUNTY, by and through its final policymakers, had a custom to authorize, condone, tolerate, and approve illegal and unconstitutional actions by OAKLAND COUNTY Police Department detectives and forensic specialists.

43. The illegal and unconstitutional actions and practices included but were not limited to:

a. Knowingly and deliberately fabricating evidence in forensic examinations to manufacture probable cause to support an arrest and conviction;

b. Knowingly ratifying and not disciplining detectives who had previously been found to have fabricated evidence or made false statements and/or material omissions to support a search or arrest warrant;

c. Failing to train officers in the proper methods of handling evidence and forensic test results, and being candid and honest in arrest warrant affidavits and testimony before judges in hearings to determine probable cause, and the handling of exculpatory evidence, all of which were standard, everyday functions for detectives in the OCSO; and,

d. Other acts that will become evident during discovery.

44. OAKLAND COUNTY's customs and policies, set forth above, demonstrated deliberate indifference to the constitutional rights of its citizens, including Plaintiffs.

45. The policies, customs, and practices of Defendant, OAKLAND COUNTY, i.e., "*Monell*" violations, set forth herein, were the moving force behind

the individual Defendants' constitutional violations.

46.     OAKLAND COUNTY's *Monell* violations were a direct and proximate cause of Plaintiffs' injuries and damages, as they caused the individual defendants to think they could act with impunity, given the unwritten policy and custom of tolerance for fabrication of evidence, lies, half-truths, deliberate or reckless omissions of material facts supporting arrest warrant affidavits to manufacture probable cause for an arrest, and deliberate concealment of material "*Brady/Giglio*" evidence from the prosecutor.

47.     The individual Defendants' misconduct, and the policies and customs of OAKLAND COUNTY, as set forth below, were a direct and proximate cause of Plaintiffs' injuries and damages, including:

   a.   Suffering a deprivation of liberty by being wrongfully incarcerated and imprisoned for a period of over twenty-five years;

   b.   Severe emotional distress for the period from their arrest to the present, including, but not limited to:  the emotional distress of being charged with murder, facing a sentence of life in prison without the possibility of parole; and being wrongfully convicted of crimes the Defendants knew they did not commit;

   c.   Physical manifestations of emotional distress including, but not limited to, sleeplessness, irritability, loss of appetite, headaches, and other symptoms;

   d.   Fright, shock, indignity, humiliation, outrage, and embarrassment of being wrongfully charged and imprisoned for murder;

e.    Loss of enjoyment of daily activities;

f.    Not being able to attend the funerals of several family members and loss of relationships;

g.    Physical injuries suffered in prison;

h.    Loss of employment and educational opportunity, past income, and future earning capacity;

i.    Restricted and/or complete loss of all forms of personal freedom and physical liberty, including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, personal fulfillment, sexual activity, family relations, recreational activities, and personal expression;

j.    Many of Plaintiffs' injuries and damages are likely to be permanent;

k.    Other damages which may be revealed through discovery.

## COUNT I
## 4th AND 14th AMENDMENT "FABRICATION OF EVIDENCE" BY ROMATOWSKI DEFENDANTS

48.    Plaintiffs incorporate by reference each preceding paragraph as if fully stated herein.

49.    At all times, Plaintiffs had a constitutional right, secured by the 4th and 14th Amendments, not to be seized and deprived of liberty because of fabrication of evidence by a government officer acting in an investigative capacity.  *See Jackson v. City of Cleveland*, 925 F.3d 793, 816 (6th Cir. 2019) ("[F]abricated evidence that

'is used as the basis for a criminal charge' can form the basis for a    § 1983 claim because, absent that evidence, there would have been no jury.") (citing *Halsey v. Pfeiffer*, 750 F.3d 273, 294 n. 19 (3d Cir. 2014)).

50.     Plaintiffs' constitutional right to be free from arrest and prosecution based upon fabrication of evidence by a police officer acting in a governmental capacity to manufacture probable cause for an arrest was clearly established before May 2, 1997, the date Gohagen was given a polygraph examination.  *Jackson*, 925 F.3d 793, 825 (6th Cir. 2019) (fabrication of evidence claim clearly established in 1975).

51.     ROMATOWSKI deliberately and knowingly fabricated evidence to manufacture probable cause for an arrest warrant and to later secure Plaintiffs' convictions.  ROMATOWSKI's fabrication of evidence came in the way of falsely reporting the results of Gohagen's polygraph test as *"passed,"* when in fact the results clearly showed he was deceptive.  ROMATOWSKI knew from HARVEY that the prosecutor would not pursue a case against Plaintiffs unless Gohagen "passed" the polygraph.

52.     Gohagen's testimony, which was put forward by the prosecutor because of ROMATOWSKI's fabricated report, clearly affected the jury's decision because it was the only evidence of Plaintiffs' involvement in the crime.

13

## COUNT II
## 4th AND 14th AMENDMENT MALICIOUS
## <u>PROSECUTION BY THE ROMATOWSKI DEFENDANTS</u>

53.     Plaintiffs incorporate by reference each preceding paragraph as if fully stated herein.

54.     At all times, Plaintiffs had a constitutional right, secured by the 4th and 14th Amendments, not to be seized and deprived of liberty resulting from fabrication of evidence and knowingly or recklessly made false statements or material omissions by a police officer in order to manufacture probable cause.

55.     ROMATOWSKI influenced or participated in the initiation of criminal prosecution and continued detention when he deliberately and knowingly fabricated evidence by falsifying the results of the Gohagen polygraph examination, which was material to a finding of probable cause and Plaintiffs' ultimate convictions.

56.     But for ROMATOWSKI's fabrication of evidence, probable cause would have been lacking; such conduct constituting a claim of federal "malicious prosecution" under the 4th Amendment.  *Mills v. Barnard*, 869 F.3d 472, 480 (6th Cir. 2017) ("The prototypical case of malicious prosecution involves an official who fabricates evidence that leads to the wrongful arrest or indictment of an innocent person.").  *See also Franks v. Delaware*, 438 U.S. 154; 98 S.Ct. 267; 457 L.Ed.2d 667 (1978).

57.     Plaintiffs' cause of action for federal malicious prosecution became complete when criminal charges were dismissed on March 22, 2022.

58.     Plaintiffs' constitutional right to be free from illegal seizure and continued detention without probable cause based upon fabrication of evidence and false statements or material omissions by a government officer acting in an investigative capacity in order to manufacture probable cause was clearly established before March 7, 1997, the earliest possible date for ROMATOWSKI's misconduct.  *See Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019).

## COUNT III
## 4th AND 14th AMENDMENT MALICIOUS <u>PROSECUTION BY HARVEY</u>

59.     Plaintiffs incorporate by reference each preceding paragraph as if fully stated herein.

60.     At all times, Plaintiffs had a constitutional right, secured by the 4th and 14th Amendments, not to be seized and deprived of liberty resulting from fabrication of evidence and knowingly or recklessly made false statements or material omissions by a police officer to manufacture probable cause.

61.     HARVEY influenced or participated in the initiation of criminal prosecution and continued detention when he deliberately and knowingly fabricated evidence by reporting the false results of the Gohagen polygraph examination to the prosecutor, which was material to a finding of probable cause

and Plaintiffs' ultimate convictions.

62.     But for HARVEY's false statements and material omissions about the fabricated Gohagen polygraph results, probable cause would have been lacking; such conduct constituting a claim of federal "malicious prosecution" under the 4th Amendment. *Mills v. Barnard*, 869 F.3d 472, 480 (6th Cir. 2017) ("The prototypical case of malicious prosecution involves an official who fabricates evidence that leads to the wrongful arrest or indictment of an innocent person."). *See also Franks v. Delaware*, 438 U.S. 154; 98 S.Ct. 267; 457 L.Ed.2d 667 (1978).

63.     The dismissal of charges on March 22, 2022, constituted a "favorable termination" of the underlying criminal case.

64.     Plaintiffs' constitutional right to be free from illegal seizure and continued detention without probable cause based upon fabrication of evidence and false statements or material omissions by a government officer acting in an investigative capacity in order to manufacture probable cause was clearly established before March 7, 1997, the earliest possible date for HARVEY's misconduct. *See Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019).

**COUNT IV**
**4th AND 14th AMENDMENT CIVIL CONSPIRACY**
**BY HARVEY AND ROMATOWSKI**

65.     Plaintiffs incorporate by reference each preceding paragraph as if fully stated herein.

66.     At all times, Plaintiffs had a constitutional right, secured by the 4th and 14th Amendments, not to be seized and deprived of liberty resulting from fabrication of evidence and knowingly or recklessly made false statements or material omissions by a police officer to manufacture probable cause.

67.     HARVEY and ROMATOWSKI agreed on a single plan to have Plaintiffs charged with the Midkiff murder by having Gohagen "pass" a polygraph examination administered by ROMATOWSKI.  HARVEY and ROMATOWSKI knew that the Oakland County Prosecutor's Office would not pursue criminal charges against Plaintiffs unless Gohagen passed the polygraph examination.

68.     In furtherance of the conspiracy, ROMATOWSKI deliberately falsified his polygraph report to indicate that Gohagen was being truthful during the exam when, in fact, Gohagen's answers to relevant questions were "deceitful."

69.     ROMATOWSKI's intentional fabrication of evidence constituted the "overt act" in furtherance of the conspiracy.

70.     Plaintiffs' right not to be charged and convicted based on fabricated evidence was clearly established before May 2, 1997, the date of the fabricated polygraph report.  *Jackson*, 925 F.3d at 825.

71.     Plaintiffs' constitutional right to be free from illegal seizure and continued detention without probable cause based on government officials conspiring to fabricate evidence and make false statements or material omissions to

manufacture probable cause was clearly established before May 2, 1997.  *See*

*Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019).

## COUNT V
### *"BRADY"* VIOLATIONS BY
### <u>DEFENDANTS HARVEYAND ROMATOWSKI</u>

72.     Plaintiffs incorporate by reference each preceding paragraph as if

fully stated herein.

73.     At all times, each Plaintiff had a constitutional right of due process,

guaranteed by the 14th Amendment, to be free from police officers not disclosing to

the prosecutor material exculpatory and/or impeachment *("Brady/Giglio")*

evidence.

74.     Defendant, ROMATOWSKI, knowingly violated his unwavering

legal duty (*"Brady"* duty) to disclose to the prosecutors all material evidence

where its exculpatory and impeachment value was apparent, by deliberately

withholding the following evidence:

     a.    That he fabricated the Gohagen polygraph test results to
             state Brandon Gohagen was being "truthful" in the
             polygraph when Gohagen was clearly being "deceitful."

     b.    That he and HARVEY conspired to frame Plaintiffs for a
             murder they did not commit by fabricating the Gohagen
             polygraph test results so the prosecutor would proceed
             with criminal charges.

     c.    Other exculpatory and impeachment evidence that will be
             uncovered during the discovery process.

75.     Defendant, HARVEY, knowingly violated his unwavering legal duty (*"Brady"* duty) to disclose to the prosecutors all material evidence where its exculpatory and impeachment value was apparent, by deliberately withholding the following evidence:

      a.     That Christina Ortega and Crystal Sauro had told police officers the actual day of the party they attended, which would have refreshed their memory on the witness stand in trial.

      b.     That ROMATOWSKI fabricated the Gohagen polygraph test results to state Brandon Gohagen was being "truthful" in the polygraph when Gohagen was clearly being "deceitful."

      c.     That he and ROMATOWSKI conspired to frame Plaintiffs for a murder they did not commit by fabricating the Gohagen polygraph test results so the prosecutor would proceed with criminal charges.

      d.     Other exculpatory and impeachment evidence that will be uncovered during the discovery process.

76.     HARVEY and ROMATOWSKI's deliberate and knowing failures to disclose the above-referenced evidence to the prosecutor resulted in material exculpatory and impeachment evidence not being turned over to Plaintiffs' defense counsel, in violation of the State's *Brady* obligations.

77.     HARVEY and ROMATOWSKI's *Brady* violations resulted in Plaintiffs not receiving due process and a fair trial, described as "a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434, (1995).  Had

Defendants disclosed the *Brady* evidence, there would have been no arrest, much less a conviction.  A re-trial that included the *Brady* evidence would result in a voluntary dismissal, directed verdict, or acquittal.

78.     The *Brady* evidence cited above would have been apparent to any reasonable officer acting in good faith.

79.     Plaintiffs' right to be provided with material exculpatory and impeachment evidence ("*Brady*" evidence), was clearly established before Plaintiffs' December 1997 trial.  *See Moldowan v. City of Warren*, 578 F.3d. 351, 382 (6th Cir. 2009) ("In fact, at least three circuits recognized prior to August 1990, the earliest possible date for Detective Ingles' involvement in the case, that this right was clearly established.").

## COUNT VI
## DEFENDANT, COUNTY OF OAKLAND'S, "*MONELL*" LIABILITY

80.     Plaintiffs incorporate by reference each preceding paragraph as if fully stated herein.

81.     Defendant, OAKLAND COUNTY, created practices and customs, as set forth above, which demonstrated "deliberate indifference" to the constitutional rights of its citizens, and was the moving force behind the individual Defendants' violations of Plaintiffs' constitutional rights.

82.     As a direct and proximate result of the individual Defendants' willful violation of Plaintiffs' constitutionally protected rights, George DeJesus and

20

Melvin DeJesus were seized and detained without probable cause, charged with crimes they did not commit, wrongfully convicted and deprived of their liberty, causing them to suffer the injuries and damages set forth above.

## COUNT VII
## STATE LAW MALICIOUS PROSECUTION BY
## <u>DEFENDANTS HARVEY AND ROMATOWSKI</u>

83.   Plaintiffs incorporate by reference each preceding paragraph as if fully stated herein.

84.   The underlying criminal proceedings against Plaintiffs ultimately terminated in their favor with a dismissal of the charges in state court on March 22, 2022.

85.   The criminal investigation and prosecution were undertaken without probable cause or good faith and with malice.  They were not undertaken with the intention of bringing Plaintiffs to justice for having committed the alleged murder. Instead, the individual Defendants acted to frame Plaintiffs for the rape/murder of Margaret Midkiff to try to get "three for the price of one" where there was no evidence of any other perpetrator except Brandon Gohagen.  HARVEY knowingly coerced Gohagen's continued fabricated "identification" of Plaintiffs as the perpetrators.  The individual Defendants knew that absent the fabricated and undisclosed evidence, there was no evidence against Plaintiffs to support probable cause for arrest or continued detention.

86.     As a direct and proximate result of Defendants' malicious

prosecution, Plaintiffs were charged and convicted of crimes they did not commit,

causing them to suffer the special injuries and damages set forth above.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, GEORGE DEJESUS and MELVIN DEJESUS,

pray for damages for their wrongful detention and imprisonment, in violation of

the Constitution, as set forth above, jointly and severally as to all Defendants,

including:

a.  Past and future compensatory damages against all
    defendants in a minimum amount of Fifty Million Dollars
    (**$50,000,000.00**);

b.  Punitive damages as to Defendant, HARVEY, in a
    minimum amount of Twenty-Five Million Dollars
    (**$25,000,000.00);**

c.  Punitive damages as to Defendant, ROMATOWSKI, in a
    minimum amount of Twenty-Five Million Dollars
    (**$25,000,000.00);**

d.  Punitive damages as to Defendant, ROMATOWSKI
    CONSULTING, in a minimum amount of Twenty-Five
    Million Dollars (**$25,000,000.00);**

e.  Reasonable attorney fees and costs pursuant to 42 U.S.C.
    §1988;

f.  The costs and disbursements of this action pursuant to 42
    U.S.C. §1920;

g.  All damages allowed under MCL 600.2907 and the
    common law of the State of Michigan, together with pre-

judgment interest, costs and attorney fees allowed under state law; and

h.   Such other and further relief as appears just and proper.

Respectfully submitted,

MUELLER LAW FIRM


*s/Wolfgang Mueller*
WOLFGANG MUELLER
Attorney for Plaintiffs
41850 W. Eleven Mile Rd., Ste. 101
Novi, Michigan 48375
(248) 489-9653
wolf@wolfmuellerlaw.com
(P43728)

Dated:  November 28, 2022

23

## **JURY DEMAND**

Plaintiffs demand a jury trial in the above-captioned matter.

Respectfully submitted,

MUELLER LAW FIRM


*s/Wolfgang Mueller*
WOLFGANG MUELLER
Attorney for Plaintiffs
41850 W. Eleven Mile Rd., Ste. 101
Novi, Michigan 48375
(248) 489-9653
wolf@wolfmuellerlaw.com
Dated:  November 28, 2022        (P43728)