UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| GEORGE DEJESUS, et al.<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM HARVEY, et al.,<br>Defendants. | Case No. 22-12879<br>Honorable Shalina D. Kumar<br>Magistrate Judge Elizabeth A. Stafford |

**OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (ECF NO. 46)**

## I.   INTRODUCTION

Plaintiffs, brothers George ("George") and Melvin ("Melvin") DeJesus (collectively "the DeJesus brothers"), served 25 years in prison based on a wrongful conviction for the rape and murder of Margaret Midkiff ("Midkiff"). ECF No. 1. After their convictions were vacated and charges were dismissed in March 2022, the DeJesus brothers filed this action against defendants William Harvey ("Harvey"), a detective sergeant with the Oakland County Sheriff's Office ("OCSO"), and Chester Romatowski ("Romatowski")[1], a consulting polygraph examiner retired from the

---

[1] Plaintiffs also sued Romatowski Consulting & Investigations, Inc., but they agreed to voluntarily dismiss their action against Romatowski's now defunct entity. *See* ECF No. 51. They also sued Oakland County, but the Court

Michigan State Police, for fabricating evidence, malicious prosecution (federal and state), withholding evidence in violation *of Brady v. Maryland,*[2] and conspiracy. ECF No. 1.

Defendants move for summary judgment of the DeJesus brothers' claims. ECF No. 46. The motion has been fully briefed, and the Court heard oral argument on January 21, 2026, during which the parties disagreed on whether defendants had waived an argument for summary judgment on the DeJesus brothers' conspiracy claim. ECF Nos. 51, 53, 55. The Court ordered supplemental briefing as to whether plaintiff's counsel had stipulated to dismiss the conspiracy claim. ECF Nos. 57, 59, 60. Further oral argument was heard on March 18, 2026. ECF No. 62. For the following reasons, the Court denies defendants' motion.

## II. FACTUAL BACKGROUND

Midkiff was raped and murdered in her Pontiac, Michigan home in the early hours of July 9, 1995. Midkiff lived next-door to the DeJesus brothers and was the mother of their close friend, Jeremy Wilkes ("Wilkes"), who found Midkiff's body in her basement. The Pontiac Police Department

---

dismissed the County earlier under Michigan's Wrongful Imprisonment Compensation Act, M.C.L. 691.1751 *et seq*. ECF No. 22.

[2] 373 U.S. 83 (1963).

("Pontiac PD") originally investigated the murder but eventually transferred the investigation to OCSO detectives.

DNA evidence linked Brandon Gohagen ("Gohagen"), a friend of both Wilkes and the DeJesus brothers, to the crime scene. Gohagen fled to Texas and then Florida, where he was apprehended in September 1996, fourteen months after the murder. After his arrest, Gohagen confessed to Harvey that he raped Midkiff but claimed that he was forced to do so at gunpoint by the DeJesus brothers, who later murdered her after Gohagen had left her house. See ECF No. 51-5.

Based on Gohagen's statement implicating the DeJesus brothers, Harvey and the prosecutors assigned to the case offered Gohagen a deal by which he would plead guilty to second degree murder and first degree criminal sexual conduct (thereby avoiding the possibility of a life without parole prison sentence) in exchange for his truthful witness testimony in the criminal prosecutions of the DeJesus brothers. ECF No. 51-6. Gohagen's proffer agreement required him to submit to a polygraph examination for the purpose of proving the veracity of his statements. ECF No. 51-3. Romatowski administered and analyzed the results of Gohagen's required polygraph examination, concluding in a report authored in May 1997 that

Gohagen was "being truthful" in his responses "to the relevant test questions." ECF No. 51-4.

Pursuant to his plea agreement, Gohagen pleaded guilty to second degree murder and first degree criminal sexual conduct. Thereafter, Gohagen gave testimony consistent with his statement against the DeJesus brothers at both their preliminary examination ("PE") and trial. ECF Nos. 51-7, 51-8. Gohagen's testimony provided the only evidence implicating the DeJesus brothers at their PE. ECF No. 51-7. Gohagen was also the prosecution's key witness at trial. ECF No. 51-14, PageID.2753.

Crystal Sauro, Melvin's girlfriend at the time of the murder, and Christina Ortega, another neighbor of Midkiff and the DeJesus brothers, testified that they were with Melvin and George, respectively, during the hours that Midkiff's murder likely occurred. ECF Nos. 46-6; 46-8. The prosecutor successfully impeached these alibi witnesses with their written statements, taken fourteen months after the murder, which discussed the events and times they were with the DeJesus brothers as occurring on the Friday night/Saturday morning (July 7-8th), not Saturday night/Sunday morning (July 8-9th). *See, e.g.*, ECF Nos. 47-5; 48-3; 48-12; 48-13.

On the strength of Gohagen's testimony—no physical evidence linked the DeJesus brothers to the murder, a jury found them guilty of first-degree

murder and first-degree criminal sexual conduct. The DeJesus brothers were sentenced to life in prison without the possibility of parole.  After exhausting all appeals and years of pursuing post-conviction relief without success, the Cooley Innocence Project at Western Michigan University and the Michigan Innocence Clinic undertook the DeJesus brothers' case. Their investigative files were submitted to Conviction Integrity Unit ("CIU") of the Michigan Attorney General's office. After its own investigation, the CIU determined that new evidence warranted vacating the DeJesus brothers' convictions. ECF No. 51-16. That new evidence included:

the 2017 conviction of Gohagen for the rape and murder of another woman 11 months before the July 1995 Midkiff rape and murder, which "bore striking resemblances to the facts of the [Midkiff] case;"

witness statements, not referenced at trial, corroborating the DeJesus brothers' respective alibis for the night of Midkiff's murder;

an interpretation of the data from Gohagen's polygraph examination which called into question the validity of the report the prosecutors relied upon in offering Gohagen the plea agreement in exchange for his testimony against the DeJesus brothers.

*Id.* at PageID.2764, 2769. The DeJesus brothers' convictions and sentences were vacated by the Oakland County Circuit Court on March 22, 2022, after they had served 25 years in prison.

The DeJesus brothers filed this action, alleging that Romatowski and Harvey conspired to deliberately and knowingly fabricate evidence by falsifying the report of Gohagen's polygraph examination results, influencing the decision and manufacturing the probable cause to prosecute them. They also allege that Harvey knowingly or inadvertently failed to disclose earlier witness statements from alibi witnesses, evidence with clear exculpatory and impeachment value, thereby violating the DeJesus brothers' due process rights under *Brady*.

Romatowski contends that he is entitled to summary judgment on the DeJesus brothers' claims against him because the record does not support their claim that he deliberately falsified or recklessly disregarded the truth in the findings regarding Gohagen's polygraph examination, and that the Gohagen polygraph report did not materially influence the prosecution's decision or affect the adjudicative process. Additionally, Harvey argues that, even if Romatowski falsified the reported results of the Gohagen polygraph, the DeJesus brothers have not provided evidence that Harvey

participated or knew about it. Likewise, both defendants argue that they are entitled to summary judgment on the DeJesus brothers' conspiracy claim.

Harvey argues that he is entitled to summary judgment on the DeJesus brothers' evidence-withholding claim because he never suppressed the earlier handwritten notes and witness statements, the substance of the notes and statements were already known to the prosecution and defense, and that the notes and statements are neither exculpatory nor material to impeachment under *Brady*. Finally, both defendants argue that summary judgment is warranted under qualified immunity because the DeJesus brothers have not met their burden to establish that their allegedly violated rights had been clearly established in 1995.

### III.   DISCUSSION

#### A.  Standard of Review

Summary judgment is appropriate where the evidence in the record, viewed in its entirety, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "The moving party bears the burden of showing that no genuine issues of material fact exist." *Scott v. First S. Nat'l*

*Bank*, 936 F.3d 509, 516–17 (6th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25 (1986)).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party, who must come forward with "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 322-23. In reviewing a motion for summary judgment, courts are to "view the factual evidence and draw all reasonable inferences in favor of the non-moving party." *Williams v. Mauer*, 9 F.4th 416, 430 (6th Cir. 2021) (citation omitted). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 251 (1986). The party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the [non-movant]." *Id*. at 252. The ultimate question for the court to determine "is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Payne v.*

*Novartis Pham. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014) (citing *Anderson*, 477 U.S. at 255).

## B. Fabrication of Evidence

The elements of a fabrication-of-evidence claim under the Due Process Clause are (1) the evidence was knowingly fabricated, and (2) the evidence likely affected the decision of the jury. *Clark v. Abdallah*, 131 F.4th 432, 448 (6th Cir. 2025) (citing *Jackson v. City of Cleveland*, 925 F.3d 793, 815 (6th Cir. 2019)). Fabricated evidence that is relied upon to criminally charge a plaintiff can form the basis for his § 1983 claim if, absent the fabricated evidence, there would have been no charge and thus, no jury. *Jackson*, 925 F.3d at 816.

Defendants dispute whether the DeJesus brothers have provided sufficient evidence for a jury to reasonably infer that Romatowski's reported polygraph conclusion was knowingly fabricated. Notably, a plaintiff "need not show 'affirmative proof' or the smoking-gun evidence of fabrication" at the summary judgment stage"; instead, one needs only to "create a genuine dispute of material fact." *Cordington v. Dolak*, 142 F.4th 884, 894 (6th Cir. 2025).

Defendants argue that Romatowski's conclusion that Gohagen was truthful was legitimate under the applicable 1997 standards. Defendants

rely upon the testimony of Oakland County's current polygraph examiner, Joseph Brien ("Brien"), as well as emails from members of the CIU referencing "new scoring techniques," to suggest that Romatowski's conclusion of Gohagen's truthfulness was valid at the time he reported it. Brien determined from his review of the raw data from Gohagen's polygraph examination that the results were merely inconclusive, or in-between the scores reflecting truthfulness and those indicating deception. ECF No. 48-17, PageID.2273. Based on Brien's review of the polygraph results, defendants argue that, at most, Romatowski's reported conclusion was mistaken, not purposefully falsified or fabricated. But as Brien clearly testified at deposition, he was trained in digital polygraphy and is not an expert in analog polygraphy, the method in use in 1997. *Id*. at PageID.2271, 2276.

In sharp contrast, John J. Palmatier ("Palmatier"), a polygraphy expert with 39 years' experience who reviewed Romatowski's conclusions and the physiological data from Gohagen's May 1997 polygraph examination, found that Romatowski's conclusion that "Gohagen was '*being truthful to the relevant test questions*' is unquestionably at odds with any accepted numerical evaluation methods…." ECF No. 51-19, PageID.2799 (quoting Romatowski's Polygraph Examination Report, ECF

No. 47-6, PageID.1483) (emphasis supplied by Palmatier). Palmatier explained that: "[A]fter conducting a detailed analysis of the physiological data…, I believe that []Romatowski's opinion is unsupported by the available evidence, science, and professional standards." *Id*. Palmatier determined that, based on both the numerical results and the questions asked of Gohagen, Romatowski's opinion was "obviously not supported by accepted professional standards and practices nor the established science that was prevalent at the time the Gohagen assessment was conducted." *Id*. at PageID.2800-01. Palmatier opined further that:

> Romatowski's previously demonstrated professional acumen…[,] as a Supervisor within the Michigan State Police, Forensic Science Division, Polygraph Unit[,] leads me to conclude that such a fundamental error from someone as experienced as []Romatowski [] strongly suggests that the test result was deliberately misrepresented. Given the available evidence, []Romatowski's opinion cannot be explained as a simple mistake.

*Id*. at PageID.2799.

If, when viewed in the light most favorable to plaintiff, the record indicates that an investigator's error was so egregious, "so catastrophic as to be incompetence at best and intentional misconduct at worst," there is sufficient evidence for a jury to find the investigator's actions were knowing or deliberate. *See Ricks v. Pauch*, 2021 WL 4775145, at *4 (6th Cir. Oct. 13, 2021); *see also Gregory v. City of Louisville*, 444 F.3d 725, 744 (6th

Page 11 of 36

2006) (expert opinion that examiner's conclusions were "far afield of what any reasonable forensic examiner would find from the evidence" was sufficient for a jury to reasonably infer that the examiner fabricated her report). Palmatier's expert opinion—that Romatowski's 'truthfulness' conclusion was such "a fundamental error" that it could not be a "simple mistake" but instead suggested deliberate misrepresentation—creates a genuine issue of material fact for a jury as to the knowingly fabricated element of the DeJesus brothers' fabricated evidence claim.

Defendants also argue that they are entitled to summary judgment on the fabrication of evidence claim because Romatowski's polygraph examination report on Gohagen could not have impacted the jury's decision. They contend no impact was possible because the polygraph was not and, indeed, could not be presented to the DeJesus brothers' jury as evidence.

> But the relevant question is not whether the fabricated evidence was *shown* to the jury; it is whether the statement *affected* the decision of the jury.…[F]abricated evidence that "is used as the basis for a criminal charge" can form the basis for a § 1983 claim because, absent that evidence, there would…be[] no jury."

*Jackson*, 925 F.3d at 816 (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 294 n.19 (3d Cir. 2014)).

Page 12 of 36

In *Jackson*, the prosecutor testified that, absent the false witness statement implicating the plaintiffs, which provided the entire basis for his belief that they committed the crime, he would have declined to prosecute. *Id*. The court reasoned that without the fabricated statement, "charges would not have been brought, and, of course, a jury that is never empaneled is a jury that does not return a guilty verdict." *Id*. at 816-17.  On that basis, the *Jackson* court determined that a reasonable jury in the civil case before it could find that the fabricated statement, though never shown to the convicting jury in the criminal case, nevertheless impacted that jury's decision. *Id*. at 816.

Likewise, the warrant prosecutor for the DeJesus brothers' case, Gary Tunis ("Tunis") testified at deposition that his office "would not have decided to proceed [against the DeJesus brothers] without knowing for certainty (sic) that Gohagen was telling the truth." ECF No. 51-9, PageID.2678. Harvey also testified at deposition that if Gohagen had failed the polygraph exam, the investigation would have been "stuck" and the prosecution of the DeJesus brothers would not have occurred without further investigation. ECF No. 51-2, PageID.2414-15. As was decided in *Jackson*, this testimony would permit a reasonable jury to find that the fabricated polygraph results affected the jury at the DeJesus brothers'

criminal trial. 925 F.3d at 816-17. Because a reasonable jury could find both that Romatowski knowingly fabricated the polygraph results and that but for those fabricated results, there would have been no prosecution and thus no jury to convict the DeJesus brothers, genuine issues of material fact preclude summary judgment for Romatowski[3] on the fabrication of evidence claim.

### C.    *Brady* Violations

Defendants also seek summary judgment of the DeJesus brothers' claim against defendants for the alleged *Brady* violations. The DeJesus brothers assert that Romatowski's false polygraph report deprived them of a truthful report reflecting Gohagen's deceitfulness, thereby constituting a *Brady* violation, as well as fabrication of evidence.

A *Brady* civil claim has three elements. *See Jackson*, 925 F.3d at 814.  First, the government must have suppressed evidence by failing to disclose it to the plaintiff during the prosecution. *Clark*, 130 F.4th at 578 (citing *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). "Second, the undisclosed evidence must favor the [plaintiff] by helping to show the [plaintiff's] innocence or to impeach an unfavorable witness." *Id*. Third, the

---

[3] Defendants' motion for summary judgment in favor of Harvey on the DeJesus brothers' fabricated evidence claim will be addressed by the Court as part of its discussion of the civil conspiracy claim. *See infra*, § III.E.

nondisclosure must have prejudiced the plaintiff. *Id*.  Prejudice exists if the undisclosed evidence is material, or, in other words, "that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Jackson*, 925 F.3d at 815 (quoting *Strickler*, 527 U.S. at 281) (internal marks omitted).

Additionally, the Sixth Circuit permits plaintiffs to simultaneously pursue a fabrication of evidence claim and a *Brady* violation claim premised on the same underlying facts. *See Mills v. Barnard*, 869 F.3d 473, 485 (6th Cir. 2017) (citing *Gregory*, 444 F.3d at 750). Although a *Brady* violation cannot on its own support a fabrication-of-evidence claim, the inverse is not true—a fabrication-of-evidence claim can support a *Brady* claim. *Ricks v. Pauch*, 322 F. Supp. 3d 813, 828 (E.D. Mich. 2018), *aff'd in relevant part*, 2021 WL 4775145, *8 (6th Cir. Oct. 13, 2021) (quoting *Atkins v. City of Riverside*, 151 F. App'x 501, 505 n.4 (9th Cir. 2005)). "[I]t does not follow that a fabrication of evidence cannot support a *Brady* claim. To hold to the contrary would be tantamount to carving an exception to the *Brady* fair trial obligation for the most egregious misconduct (deliberate fabrication)." *Id*. (quoting *Atkins*, 151 F. App'x at 505).

The facts regarding Romatowski's report of Gohagen's polygraph results map onto the elements of a Brady claim, as well as a fabrication-of-

evidence claim. *See Mills*, 869 F.3d at 485-86. An accurate report of Gohagen's polygraph results (reflecting that Gohagen's statements incriminating the DeJesus brothers were deceitful) would have been favorable to plaintiffs; the falsified report suppressed an accurate report; and an accurate report "would have had a reasonable probability of changing the result of the proceeding." *Id*. at 486. Thus, a reasonable jury could find that Romatowski suppressed the accurate polygraph results showing Gohagen was deceitful and that those accurate results would have precluded the DeJesus brothers' prosecution. Genuine issues of material fact preclude summary judgment for Romatowski[4] on the DeJesus brothers' *Brady* claim for withholding an accurate polygraph report.

The DeJesus brothers also contend that Harvey was obliged but failed to turn over the handwritten notes to the prosecutor or the brother's defense counsel. Defendants argue that Harvey did not suppress the handwritten notes ultimately discovered in the OCSO file because they were not his notes, he had no recollection of seeing them, and he did not know who wrote them but speculated that they may have been prepared by the Pontiac PD before he assumed responsibility for the Midkiff murder

---

[4] Like the fabrication of evidence claim, the Court will address the *Brady* violation claim (related to the polygraph report) against Harvey in its discussion of the DeJesus brothers' civil conspiracy claim. *See infra* § III.E.

investigation. *See* ECF No. 46, 53. But "officer liability for a *Brady* violation does not depend upon where the evidence or information originates." *Titus v. Werkema*, 2025 WL 3239831, at *21 (W.D. Mich. Nov. 20, 2025). Nor is the scope of a police officer's *Brady* obligation limited "to materials generated or solely possessed by that particular officer." *Id*. (citing *Stickler*, 527 U.S. at 281 and *Kyles v. Whitely*, 514 U.S. 419, 432 (1995)).

Harvey testified at deposition that he had not seen the handwritten notes from initial police interviews with Sauro and Ortega (among others) until his counsel in this matter showed them to him shortly before his deposition. ECF No. 47-18, PageID.1913. He further testified that he would have been the person who requested the investigation file from the Pontiac PD and that he had no reason to suspect he did not receive the entirety of the file. *Id*. Yet, the lead assistant attorney with the Attorney General's CIU declared under the penalty of perjury that the handwritten notes at issue were contained within the OSCO file when the CIU obtained those records during its investigation. ECF No. 51-12.

Harvey also testified that, as the officer in charge of the Midkiff investigation, he was the person to present the investigation file to the prosecutor. ECF No. 47-18, PageID.1913. He agreed that the handwritten notes helped support the DeJesus brothers' alibi and that, if the notes were

in the file, they were required to be turned over to the prosecutor. *Id*. Pendergast testified that she was not aware that the handwritten notes existed. ECF No. 47-7, PageID.1510. George's criminal defense counsel also testified at deposition that he had no recollection of seeing the handwritten notes. ECF No. 48-18, PageID.2292.

The Sixth Circuit addressed a similar situation in *Elkins v. Summit Cnty.*, where the defendant officers claimed that the plaintiff had "not presented sufficient evidence demonstrating that the officers actually received the ... [non-disclosed] memorandum…." 615 F.3d 671, 675 (6th Cir. 2010). In *Elkins*, the defendant officers denied having seen the undisclosed evidence, a memorandum memorializing statements made by the victim's neighbor, who had been arrested on unrelated charges, implicating himself in the crime for which plaintiff was wrongly convicted. *Id*. "There is no dispute that the memorandum, if mailed, would have been delivered to the detectives assigned to the case….[N]o other relevant document in the case was missing" and an incident report on the neighbor's charged offense, which was placed in the mailbox along with the memorandum, was received and preserved by the detectives. *Id*. That the memorandum was never delivered to the prosecutor or the plaintiff was not disputed. *Id*. The *Elkins* court ruled that the district court properly denied

summary judgment to the defendant officers on the plaintiff's *Brady* claim. When viewing the facts most favorably for the plaintiff, the district court properly assumed that the memorandum was delivered to the officers investigating the Elkins case, "according to police policy and custom, and also assume[d] that having read the memo, the officers withheld it, never divulging it to the prosecution, thereby preventing it from being disclosed to the defense." *Id*. at 676 (cleaned up); *see also Gillispie v. City of Miami Twp.*, 2020 WL 5629677, at *10–11 (S.D. Ohio Sept. 21, 2020), *aff'd*, 2025 WL 1276900 (6th Cir. May 2, 2025) (finding that summary judgment for defendant on *Brady* claim was not appropriate because, assuming plaintiff's evidence as true and drawing all inferences in his favor, a reasonable jury could find that the undisclosed supplemental reports existed and formed a basis for exonerating plaintiff and that defendant officer had those reports, read them, recognized them as exculpatory, and did not disclose them to the prosecutor).

*Elkins* supports the same outcome here. Here, the handwritten notes from the 1995 interviews with alibi witnesses Sauro and Ortega were found in the OCSO file in 2021. This, combined with Harvey's testimony regarding the customary practice for the receipt of files in investigations the OCSO took over from local police forces, supplies evidence that, when viewed in a

Page 19 of 36

light most favorable to plaintiffs, those notes had been provided to Harvey during the OCSO investigation and that Harvey would have read those notes when he was assigned the Midkiff case and received the Pontiac PD's file. That Harvey withheld this evidence from the prosecutor, and ultimately, the DeJesus brothers, would thus be a reasonable inference from the evidence before the Court. *See* ECF No. 47-18, PageID.1913; *Elkins*, 615 F.3d at 676; *Jackson*, 925 F.3d at 814 ("a jury is allowed to make reasonable inferences from facts proven in evidence having a reasonable tendency to sustain them") (internal quotation omitted).

Additionally, as Harvey testified, the notes at issue contained information that would strengthen the credibility of the DeJesus brothers' alibi witnesses and undermine the credibility of Gohagen's testimony that the DeJesus brothers murdered Midkiff after Gohagen raped her. As the Sixth Circuit has explained, the question for the Court "is whether the exculpatory value of the [handwritten notes] would have been apparent to [Harvey] given the state of the case at the time." *Elkins*, 615 F.3d at 677. Drawing all reasonable inferences in the DeJesus brothers' favor, the Court finds that it would have. Harvey testified at deposition that if the handwritten notes clarified that the events detailed by Sauro and Ortega occurred on the Saturday night (as opposed to Friday), they would bolster the DeJesus

brothers' alibi and be valuable to them as both exculpatory and impeachment evidence. ECF No. 51-2, PageID.2418.

In summary, the DeJesus brothers present circumstantial evidence that the handwritten notes were in the case file when Harvey took over the investigation and that he read the case file at that time. The value of the notes for exculpation and impeachment purposes was apparent to Harvey. Assuming the DeJesus brothers' evidence regarding the handwritten notes is true and drawing all reasonable inferences in their favor, a reasonable jury could find that the notes were in the OCSO file at the time the Pontiac PD forwarded its investigation records to the OCSO, that these notes supported the testimony of the DeJesus brothers' alibi witnesses which, in turn, would have served to impeach Gohagen's testimony, that Harvey had those notes in his possession and knew their impeachment value, and that Harvey did not disclose the notes to the prosecutor. In such circumstances, a reasonable jury could likewise find the three elements of a *Brady* claim: (1) the evidence at issue was favorable to the DeJesus brothers because of its exculpatory and impeachment value; (2) the evidence was suppressed by Harvey; and (3) prejudice ensued, including "that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Jackson*, 925 F.3d at 814-15.

The Court finds that the evidence presented creates genuine issues of material fact which may be properly resolved only by a jury because they may reasonably be resolved in favor of either party. *Gillispie*, 2020 WL 5629677, at *10–11. Accordingly, summary judgment for the DeJesus brothers' *Brady* claim against Harvey for withholding the handwritten notes from 1995 is not warranted.

### D.    Malicious Prosecution (Federal)

The elements for a malicious prosecution claim under the Fourth Amendment are: (1) that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute; (2) that there was a lack of probable cause for the criminal prosecution; (3) that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) that the criminal proceeding must have been resolved in the plaintiff's favor. *Howell v. McCormick*, 148 F.4th 834, 852-53 (6th Cir. 2025).

The parties do not dispute that the DeJesus brothers clearly suffered a deprivation of liberty—25 years in prison—or that the proceeding was eventually resolved in their favor when their convictions and sentences were vacated. This leaves the Court to resolve only the first and second elements.

Under the first element, an investigator does not escape liability just because someone else (e.g., the prosecutor) made the actual decision to prosecute, so long as the plaintiff can show that the officer influenced or participated in the decision to prosecute. *Tlapanco v. Elges*, 969 F.3d 638, 655 (6th Cir. 2020) (quoting *Sampson v. Village of Mackinaw City*, 685 F. App'x 407, 417 (6th Cir. 2017)) (internal marks omitted). "Providing reports, affidavits, or other investigative materials containing falsehoods, omissions, or misstatements to a prosecutor can constitute participation when (1) those materials formed the basis for the charge, and (2) the falsehoods, omissions, or misstatements were made deliberately or with reckless disregard for the truth." *Id*. (quoting *Meeks v. City of Detroit*, 727 F. App'x 171, 178 (6th Cir. 2018)) (internal marks omitted).

In *Tlapanco*, the defendant requested the arrest warrant from the prosecutor's office and swore out the arrest warrant to the judge. *Id*. Although the prosecutor's office authorized the arrest warrant and created the charging document, the defendant supplied the false reports and investigative materials forming the basis for the charges. *Id*. This evidence satisfied malicious prosecution's first prong requiring the defendant to have participated in and influenced the decision to prosecute. *See id*.

Page 23 of 36

Viewing the evidence in the light most favorable to the plaintiffs, Romatowski misrepresented the results of Gohagen's polygraph examination, thereby greenlighting the use of his testimony as the sole basis for charging and prosecuting the DeJesus brothers.

Defendants argue that probable cause existed here because facts and circumstances would lead a reasonable person to believe a crime had been committed. ECF No. 46, PageID.341 (citing *Criss v. City of Kent*, 867 F.2d 259 (6th Cir. 1988)). They contend that Gohagen provided an eye-witness account implicating the DeJesus brothers in Midkiff's murder and that his account was supported by DNA evidence. *See id*. However, the supporting DNA evidence referenced by defendants linked only Gohagen to the crime, not the DeJesus brothers.

It is well established that investigators cannot rely on a probable cause determination [to absolve them of liability] when that determination was premised on the investigator's own material misrepresentations to the court. *Sykes v. Anderson*, 625 F.3d 294, 312 (6th Cir. 2010) (citing *Gregory*, 444 F.3d at 758). To establish that probable cause was premised on the investigator's material misrepresentation, a plaintiff must present evidence that defendants (1) stated a deliberate falsehood or showed

Page 24 of 36

reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause. *Id.*

As discussed above, the DeJesus brothers have raised a material question of fact as to whether Romatowski's report of Gohagen's polygraph results was deliberately falsified. The issue of whether the falsified report was material to the finding of probable cause is also one for the jury. Again, when viewing the evidence in a light most favorable to plaintiffs, as the Court must, Gohagen's testimony was the only evidence linking the DeJesus brothers to the crime. *See* ECF No. 51-7. Gohagen's testimony, which acknowledged that he raped Midkiff but denied any involvement in her murder, was, in the words of the case's prosecuting attorney, Donna Pendergast ("Pendergast"), blatantly "self-serving" and "somewhat suspect." ECF No. 47-4, PageID.1456.[5] Keenly aware of Gohagen's credibility issues, the prosecutor's office insisted that Gohagen undergo a polygraph examination as part of the proffer agreement. ECF No. 51-3.

---

[5] ECF No. 47-4 is the Michigan Attorney General's CIU Final Investigative Report dated December 29, 2021 ("CIU Report"). The CIU Report quotes Pendergast, the lead prosecutor for the Midkiff case, who made these comments assailing the credibility of Gohagen's statement on the record at the conclusion of Gohagen's PE in November 1996. Although she questioned the veracity of Gohagen's statement implicating the DeJesus brothers, Pendergast nonetheless utilized Gohagen as the key witness against them. *See* ECF No. 47-7, PageID.1507.

Tunis, the warrants prosecutor assigned to the case, admitted at deposition that the prosecutor's office would not have decided to prosecute the DeJesus brothers absent certainty that Gohagen was telling the truth. ECF No. 51-9, PageID.2678. Whether the prosecutor's office would have permitted Gohagen to testify if Romatowski's report indicated Gohagen had failed his polygraph examination, and whether it had probable cause to prosecute the DeJesus brothers absent Gohagen's testimony are questions of fact for the jury.

In sum, the DeJesus brothers have provided evidence from which a reasonable jury could find that Romatowski influenced or participated in the decision to prosecute them by knowingly or recklessly issuing a false report material to their prosecution and that, without that report, prosecutors would have lacked probable cause to prosecute them. Accordingly, summary judgment of the DeJesus brothers' malicious prosecution claim against Romatowski is not appropriate.[6]

### E.  Civil Conspiracy

---

[6] Like the fabrication of evidence and *Brady* violation claims, summary judgment for Harvey on the malicious prosecution claim is addressed by the Court as part of its discussion of the civil conspiracy claim. *See infra*, § III.E.

Relying on an email from the DeJesus brothers' counsel indicating that he would concur with the dismissal of the civil conspiracy claim, defendants did not move for summary judgment of this claim. ECF No. 53-18; *see* ECF No. 46. Nevertheless, the parties never formally stipulated to the dismissal of the civil conspiracy claim. Apparently forgetting about counsel's email, plaintiffs' response brief in opposition to defendants' motion for summary judgment argues that the civil conspiracy claim survives because defendants failed to advance an argument for its dismissal in their motion for summary judgment and thus waived any such argument. ECF No. 51.

Defendants argue that the Court should enforce plaintiffs' counsel's agreement to dismiss the civil conspiracy claim, asserting that Michigan courts emphasize that parties are bound by the representations and agreements made by counsel. *See* ECF No. 59. Defendants cite an unpublished Michigan Court of Appeals opinion as support for their argument. See *Dabish v. Essak*, 2026 WL 130820 (Mich. Ct. App. Jan. 16, 2026). But the Court finds this case inapposite because the court in that decision upheld the terms of a settlement placed on the record. Here, the offer to dismiss the civil conspiracy claim was not made on the record, and, as plaintiffs emphasize, was never reduced to a stipulated order submitted

to or entered by the Court. Thus, plaintiffs are not estopped from continuing to pursue their civil conspiracy claim. *See Ramirez v. Bolster & Jeffries Health Care Grp., LLC*, 277 F. Supp. 3d 889, 901 (W.D. Ky. 2017) (judicial estoppel applies only to prevent a party from asserting a position contrary to one asserted under oath and where the court adopted the contrary position as part of a preliminary or final disposition). Further, public policy favors decisions on the merits, and defendants were not prejudiced by their reliance on plaintiffs' counsel's email because they were permitted to advance and fully brief their argument for summary judgment of the civil conspiracy claim. Accordingly, the Court will consider the parties' substantive arguments for summary judgment of the DeJesus brothers' civil conspiracy claim.

A civil conspiracy is an agreement between two or more people to injure another by unlawful action. *Rieves v. Town of Smyrna*, 67 F.4th 856, 862 (6th Cir. 2023) (citing *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). "To prove conspiracy, plaintiffs must show (1) that there was a single plan, (2) that the alleged co-conspirator shared in the general conspiratorial objective, and (3) that an overt act was committed in furtherance of the conspiracy that caused injury to the complaint." *Id*. (quoting *Hooks*, 771 F.2d at 944) (internal marks omitted).

Page 28 of 36

"Plaintiffs need not prove an express agreement among the conspirators, nor must they show that each conspirator knew all of the details of the illegal plan or all of the participants involved." *Id.* (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014)) (internal marks omitted). Civil conspiracy plaintiffs can rely on circumstantial evidence to establish an agreement among the conspirators to survive summary judgment. *Id.*; *see also Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000) (conspiracy cases will rarely have direct evidence of an express agreement among all the conspirators, thus circumstantial evidence may provide adequate proof).

The DeJesus brothers assert that Harvey and Romatowksi entered into a single plan, to falsify Gohagen's polygraph results, with the shared objective of prosecuting the brothers for Midkiff's murder despite the absence of any credible evidence linking them to the crime. Plaintiffs identify circumstantial evidence, which they argue would permit a jury to reasonably conclude that defendants acted in concert to generate the false polygraph report supporting Gohagen's statements that the DeJesus brothers murdered Midkiff.

First, the DeJesus brothers point to Harvey's deposition testimony that he and Romatowski discussed that charges against the brothers were

Page 29 of 36

contingent on Gohagen passing a polygraph examination. ECF No. 51-2, PageID.2414-16. They also point to Harvey's testimony that Romatowski read the complete report on the Midkiff investigation, plus had briefings from Harvey and other members of the investigative team regarding the case. *Id*. at PageID.2416. Harvey also testified that Romatowski knew about the proffer agreement and its requirement that Gohagen pass a polygraph examination. *Id*. The DeJesus brothers also point to evidence that Romatowski was known to be a competent and ethical polygraph examiner, who would not have fabricated evidence on his own. *Id*. at PageID.2415; ECF No. 51-9, PageID.2675. Further, they rely on Harvey's testimony that Romatowski was his mentor, that Harvey had worked with Romatowski many, many times, that he conferred with Romatowski throughout the investigation, and that he sought Romatowski's opinion on a multitude of things. ECF No. 51-2, PageID.2415-17. Finally, the brothers rely on the opinion of their expert, Palmatier, that Romatowski's reported conclusion of truthfulness was so misaligned with the raw data from Gohagen's polygraph exam that it suggested deliberate misrepresentation rather than simple mistake. ECF No. 51-19, PageID.2799.

Defendants assert that, at most, the evidence shows that Harvey and Romatowski coordinated the logistics of administering a polygraph

examination. Defendants argue that the "mere existence of a relationship, routine coordination, or parallel conduct among public officials does not establish a conspiracy absent evidence of a shared unlawful objective." ECF No. 59, PageID.3573-74 (citing *Hooks*, 771 F.2d at 944).

But to support their argument, defendants cite the Court to two unpublished cases, *Annabel v. Michigan Dep't of Corrections*, 2017 WL 11639427, *4 (6th Cir. Oct. 2, 2017) and *Okoro v. Krueger*, 2007 WL 3333476, *10 (E.D. Mich. Sept. 21, 2007), which do not differentiate or even address the difference between routine coordination or parallel conduct and a shared conspiratorial objective. Instead, these pro se prisoner cases were dismissed for failing to plead conspiracy with sufficient specificity to state a claim. In *Annabel*, the court summarily dismissed the plaintiff's conspiracy claim as frivolous because he merely alleged that individual defendants caused him harm and then drew unsupported conclusions that they acted together to do so. *Annabel*, 2017 WL 11639427, at *4. Likewise, in *Okoro*, the magistrate judge determined that plaintiff's civil conspiracy claim was appropriately dismissed because plaintiff merely listed defendants and alleged that they conspired together. *Okoro*, 2007 WL 3333476, *10. (alleged no facts from which the court could infer that the defendants acted in concert).

Page 31 of 36

The Court finds defendants' cited authority inapposite to the issues before it. The Court further finds that when viewed in a light favorable to the DeJesus brothers, Harvey's testimony regarding Romatowski's participation in the Midkiff investigation suggests an involvement transcending a mere relationship with Harvey and routine coordination for a suspect's polygraph examination, and supplies circumstantial evidence of a shared conspiratorial objective in falsifying Gohagen's polygraph report sufficient to withstand summary judgment of plaintiffs' civil conspiracy claim. If a jury finds that Harvey conspired with Romatowski to produce the falsified report on Gohagen's polygraph examination, Harvey, like Romatowski, would be subject to the DeJesus brothers' surviving fabricated evidence, *Brady* violation, and federal malicious prosecution claims. These claims against Harvey likewise withstand summary judgment.

## F. Qualified Immunity

Qualified immunity requires the Court to determine (1) "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right" and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citations omitted). "To qualify as clearly established, a

legal rule must have a sufficiently clear foundation in then-existing precedent." *Clark v. Louisville-Jefferson Cnty. Metro Govt.*, 130 F.4th 571, 581 (6th Cir. 2025) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)) (internal marks omitted). The rule meets this test if the precedent at the time of the defendants' actions "rendered it 'beyond debate' that the actions violated the law." *Id*. (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)).

As plaintiffs note, courts had clearly established the legal rule that forensic scientists cannot deliberately fabricate incriminating evidence or conceal exculpatory evidence by 1990, seven years before the DeJesus brothers were charged. *Id*. at 582 (citing *Moldowan v. City of Warren*, 578 F.3d 351, 397 (6th Cir. 2009) and *Spurlock v. Satterfield*, 167 F.3d 995, 1005-07 (6th Cir. 1999)). That an investigator influences the decision to initiate a prosecution by fabricating evidence against a defendant or withholding exculpatory evidence from the prosecution was clearly established as a constitutional violation before 1975. *See Jackson*, 925 F.3d at 827. Indeed, "[t]he prototypical case of malicious prosecution involves an official who fabricates evidence that leads to the wrongful [prosecution] of an innocent person." *Mills*, 869 F.3d at 480.

Page 33 of 36

Because the record evidence creates a genuine factual dispute about (1) whether Romatowski falsified the report of Gohagen's polygraph results, thereby also withholding the accurate results reflecting Gohagen's deceitfulness; (2) whether Harvey and Romatowski shared the unlawful objective of charging the DeJesus brothers without evidence that they were connected to Midkiff's murder; and (3) whether there was probable cause to arrest and prosecute the brothers without Gohagen's testimony, they are not entitled to qualified immunity on any of the plaintiffs' federal claims.

## G. Malicious Prosecution (State)

The elements of a malicious prosecution claim under Michigan law are the same as those under federal law, except that under Michigan law the plaintiff must also show that the defendant official's action was undertaken with malice or a purpose in instituting the criminal claim other that bringing the offender to justice. *Shepherd v. Metz*, 453 F. Supp. 3d 924, 935 (E.D. Mich. 2020) (quoting *Peterson Novelties, Inc. v. City of Berkley*, 672 N.W.2d 351, 363 (Mich. Ct. App. 2003)). Malice has been defined as the "reckless disregard of the rights of another." *Odom v. Wayne Cnty.*, 760 N.W.2d 217, 225 (Mich. 2008). Want of probable cause may be inferred as malice. *See Cotton v. Hughes*, 2025 WL 410077, *22 (E.D. Mich. Feb. 5, 2025) (citing *Belt v. Ritter*, 171 N.W.2d 581, 586 (Mich. Ct.

App. 1969)) ("[M]alice can be inferred from lack of probable cause insofar as someone knowingly and falsely swears that facts in a complaint are true, thereby negating probable cause and demonstrating malicious intent.").

Defendants argue that they are entitled to summary judgment on the DeJesus brothers' state malicious prosecution claim because they fail to adduce evidence that defendants acted with malice. The Court disagrees. As discussed above, the record, viewed in a light most favorable to the DeJesus brothers, suggests Romatowski, in conjunction with Harvey, purposefully falsified the report of Gohagen's polygraph results and that there would have been no probable cause to prosecute the DeJesus brothers without Gohagen's false testimony. Knowingly fabricating evidence to manufacture probable cause satisfies the malice element of the state malicious prosecution claim. *See Ramsey v. Rivard*, 694 F. Supp. 3d 955, 983-84 (E.D. Mich. 2023).

Defendants also argue that summary judgment for the state malicious prosecution claim is appropriate because they are protected by state governmental immunity. "Malicious prosecution is an intentional tort, and therefore, governmental immunity protects the defendant if he can show (1) that he was acting in the course of his employment and at least reasonably believed that he was acting within the scope of his authority; (2) that his

actions were discretionary, not ministerial, in nature; and (3) that he acted without malice and in good faith." *Id*. at 984 (cleaned up). Again, the record viewed in the light most favorable to plaintiffs, suggests that Romatowski and Harvey fabricated the report corroborating the truthfulness of Gohagen's statement incriminating the DeJesus brothers, and that Harvey and Romatowski knew that Gohagen's deceitful testimony was the only evidence supporting probable cause to prosecute the brothers. Fabrication of evidence to support otherwise lacking probable cause demonstrates the bad faith necessary to defeat the governmental immunity defense. *Id*. (citing *Odom*, 760 N.W.2d at 228).

Accordingly, summary judgment is not warranted on plaintiffs' state malicious prosecution claim.

## IV.   CONCLUSION

For all these reasons, the Court **DENIES** defendants' motion for summary judgment. ECF No. 46.

**IT IS SO ORDERED.**

s/Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge

Dated: March 24, 2026